Monica Flood Brennan, ISB 5324
JAMES, VERNON & WEEKS, P.A.
Attorneys at Law
1626 Lincoln Way
Coeur d'Alene, ID  83814
Telephone: (208) 667-0683
Facsimile: (208) 664-1684
Mbrennan@jvwlaw.net
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DANIEL ST. JOHN AND DAWN WORKMAN, a married couple,<br><br>                             Plaintiffs,<br><br>vs.<br><br>KOOTENAI COUNTY, IDAHO; the KOOTENAI COUNTY SHERIFF'S OFFICE, BENJAMIN WOLFINGER, individually and in his official capacity as the Kootenai County Sheriff; Lieutenant Scott Maxwell individually and in his official capacity as a Kootenai County Lieutenant Sheriff; Vivienne Reynolds, individually and in her official capacity as the Kootenai County Sheriff Animal Control Officer; Shane Vrevich individually and in his capacity as a Kootenai County Sheriff Deputy; Michael Hanson, individually and in his capacity as a Kootenai County Sheriff Deputy; Craig Chambers, Individually and in his capacity as a Kootenai County Sheriff Deputy; Anthony Ghirarduzzi, Individually and in his capacity as a Kootenai County Sheriff Animal Control Officer; and JOHN/JANE DOES 1-10, individually and in their official capacities,<br><br>                             Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL |

COMES NOW, the above-named Plaintiffs Daniel St. John and Dawn Workman, husband and wife, by and through their attorney of record, Monica Flood Brennan of the law firm James, Vernon & Weeks, P.A., and for a cause of action against the above-named Defendants, and complains and alleges as follows:

## I.
## IDENTITY OF THE PARTIES, JURISDICTION AND VENUE

1.1   Plaintiff Daniel St. John, is a married male who was living in Kootenai County Idaho at the time of the alleged incidents.

1.2   Plaintiff Dawn Workman is a married female living and owning a farm in Kootenai County, Idaho at the time of the alleged incidents.

1.3   The Plaintiffs will hereinafter be referred to as "the St. Johns."

1.4   Defendant Kootenai County, Idaho is a corporate body pursuant to I.C. §31-601 and other applicable law.

1.5   Defendant Benjamin Wolfinger is an Idaho citizen.

1.6   Defendant Benjamin Wolfinger in his official capacity as Kootenai County Sheriff at the time of the alleged incidents was an officer of Kootenai County, Idaho pursuant to I.C. §31-2001(1) and other applicable law. Sheriff Wolfinger's culpable acts and omissions were undertaken under color of state law. Sheriff Wolfinger operated the Kootenai County Sheriff's Office as an instrumentality of Kootenai County, Idaho. Sheriff Wolfinger, as a statutory officer of Kootenai County, had a final policy making authority for Kootenai County and the Kootenai County Sheriff Office and acted as a final policymaker with regard to all of his culpable decisions, including hiring, retaining, training, supervising, and controlling deputy sheriffs.

1.7   Defendant Vivienne Reynolds is an Idaho Citizen.

1.8   In her official capacity, Deputy Reynolds was a deputy acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Vivienne Reynolds culpable acts and omissions were undertaken under

color of state law.

1.9  Defendant Scott Maxwell is an Idaho Citizen.

1.10 In his official capacity, Lieutenant Scott Maxwell was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Lieutenant Scott Maxwell's culpable acts and omissions were undertaken under color of state law.

1.11 Defendant Shane Vrevich is an Idaho Citizen.

1.12 In his official capacity, Defendant Shane Vrevich was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Shane Vrevich's culpable acts and omission were undertaken under color of state law.

1.13 Defendant Michael Hanson is an Idaho Citizen.

1.14 In his official capacity, Defendant Michael Hanson was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger.  Defendant Michael Hanson's culpable acts and omissions were undertaken under color of state law.

1.15 Defendant Craig Chambers is an Idaho Citizen.

1.16 In his official capacity, Defendant Craig Chambers was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger.  Defendant Craig Chambers culpable acts and omissions were undertaken under color of state law.

1.17 Defendant Anthony Ghirarduzzi is an Idaho Citizen.

1.18 In his official capacity, Defendant Anthony Ghirarduzzi was an officer acting on behalf of Kootenai County, Idaho, the Kootenai County Sheriff's Office and Sheriff Wolfinger. Defendant Craig Chambers' culpable acts and omissions were undertaken under color of state law.

1.19 Collectively, Deputies and Officers Maxwell, Reynolds, Vrevich, Hanson,

Chambers, and Ghirarduzzi will be referred to herein as "the Deputies."

1.20   John/Jane Does 1-10 are/were persons acting on behalf of Kootenai County, the Kootenai County Sheriff Department, Sheriff Wolfinger, and the Deputies; and/or whose acts and omissions were actual, direct and proximate causes of the illegal taking of property and the emotional and physical injuries to Dawn Workman and Daniel St. John.  The true identities, acts or omission of John/Jane Does 1-10 are currently unknown.  Plaintiffs reserve the right to Amend this Complaint if or when their identities and/or actions and/or responsibilities are discovered.

1.21   <u>Jurisdiction and Venue:</u>  This Court has jurisdiction and venue over this case by virtue of Idaho Code §5-514, Idaho Code §5-404, and 28 U.S.C. §§1331, 1343, and 1367 and other applicable laws because this action arises under the Constitution and the laws of the United States to redress the deprivation of Daniel St. John's and Dawn Workman's civil rights, and because those claims arising under Idaho law form a part of the same case or controversy under Article III of the United States Constitution.

1.22   The Court has personal jurisdiction over Defendants because they committed acts and omissions giving rise to the Workman/ St. John's damages.

1.23   Venue is proper in Kootenai County pursuant to 28 U.S.C. §1391(b)(1) and (2) and other applicable law because Defendants reside in Idaho and because a substantial part of the events or omissions giving rise to the case occurred in Idaho, Kootenai County.

## II.
## GENERAL ALLEGATIONS

2.1   Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth herein.

2.2   The St. Johns, Daniel St. John and Dawn Workman are a married couple who, on February 14, 2019 owned a small family farm in Post Falls, Kootenai County, Idaho.

2.3     The St. Johns' farm had chickens, sheep, pigs, dogs, cats, and bulls as well as many other animals. One of the animals that was considered a family pet was a sheep named "Baa Baa" who was raised by bottle feeding, was not kept in a pen and who would ride in the cab of the truck with Mr. St. John when he would go on errands. The children would pet Baa Baa and loved it when he came with Mr. St. John.

2.4  The St. Johns also had a bull named "Ferdinand" who was a family pet as well as livestock. This animal was a large animal in excess of 400 pounds with horns.

2.5     The winter of February, 2019 was very cold and had quite a large snow fall before up to February 14, 2019 and extending to February 21, 2019.

2.6     Many of the Plaintiffs' animals resided outside with coverings and/or enclosures during the winter time, which is common in North Idaho. Mr. St. John and his wife had to feed the animals daily and bring them fresh water twice a day before it froze.

2.7     Over the course of several years the St. John's had invested a lot of time, money, love, hopes and heartache into the animals on the farm. Some animals were considered livestock, while others were considered family pets.

2.8  On or around February 14, 2019, some of the animals on the farm had died of a flu or some disease. Mr. St. John left some dead animal bodies buried in the snow until the thaw because they were frozen solid.

2.9  On or around February 14, 2019, Kootenai County Sheriff Officers arrived at the family farm of the St. Johns and entered the property without a warrant. The officers took pictures of all of the animals at the farm and their condition.

2.10  On or around February 14, 2019, Kootenai County Sheriff Deputies served a notice on the St. Johns requiring them to do certain things regarding their animals and their care, including making sure they had running water and heat. The Sheriff Deputies gave the St. Johns 7 days to accomplish these tasks. These demands were unreasonable, but Mr. St. John attempted to accomplish the tasks as requested.

2.11  On or around February 20 and 21, 2019, Kootenai County Sheriff Deputies arrived

at the family farm of the St. John's and began confiscating some of the St. John's animals.

2.12   On or around February 21, 2019, the Deputies advised Daniel St. John that they were going to take his bull, Ferdinand, and his sheep, Baa Baa, and other animals, into state custody.

2.13   They arrived with a trailer and instructed Mr. St. John to herd the bull into the trailer. The Deputies told Mr. St. John that he had to cooperate with herding the bull, he would not be charged with a crime of animal cruelty.

2.14   The Kootenai County Sheriff Department arrived with a trailer and told Mr. St. John that he should assist them in putting the bull named "Ferdinand" into the trailer.  Mr. St. John said, "do I have to?"  Officers advised him they would go easier on him if he assisted them.

2.15   On or around February 21, 2019, Daniel St. John, being armed with only a rake, obeyed the commands of the Deputies by trying to Ferdinand into a trailer.

2.16   The bull was approximately 500 pounds with large horns.  The snow was very deep and there were deep trails running through the snow through which the bull was being prodded.

2.17   Deputy Reynolds wrote in her official report, "The bull may pose a safety threat while we were herding it down a path to the trailer."  After Reynolds contacted her supervisor, Lieutenant Maxwell, for instructions, she reported, "he instructed us to make an effort but to stop if anyone felt endangered.  As a precaution, Deputy Hanson and Chambers armed themselves."

2.18   The report is attached hereto as Exhibit C.

2.19   Kootenai County Sheriff Deputies and Animal Control Officers stood armed, far away, watching while Mr. St. John and a civilian who owned the trailer attempted to prod the bull into the trailer.  The man hired by the county was stabbing the bull with a pitch fork while Mr. St. John attempted to coax the bull with the head of his rake.

2.20   While watching, the Deputies openly discussed what they would do if and when Dan St. John was gored by the bull while they watched him attempt to put the bull in the trailer.

2.21   Officer Hanson wrote in his official report, "I was next advised there was some concerns that the bull may become aggressive once released from the fenced area. ACO Reynolds

spoke with Lt. Maxwell, who was advised of the situation and confirmed an attempt should be made to impound the animal.  Due to safety concerns, Deputy Chambers and I armed ourselves with our issued 12ga shotguns, loaded with slugs, in case the bull became violent.  St. John released the bull from the enclosed area, and people on scene attempted to herd it into the waiting trailer."

2.22  As Kootenai County Sheriffs armed with weapons were standing by, the bull became angered and gored Mr. St. John several times, ramming him violently up against a trailer.  Due to the high snow shoots, Mr. St. John had not where to run away from the bull.

2.23  Deputy Hanson wrote in his official report, " The bull would not cooperate, and refused to go inside the trailer or back toward the fenced in area.  At one point, it started to walk directly toward Deputy Chambers, who was standing off to the side on a small trail in the snow.  As the bull approached Deputy Chambers, he was unable to make it stop, and had to jump off of the trial into the deep snow to avoid getting trampled.  As St. John and others continued to herd the bull into the trailer, (it) continued to become more and more agitated, and began grunting and swinging its head in an aggressive manner."

2.23   Mr. St. John was blocked and could not escape the inevitable violent attack by the bull.

2.24  In his official report, Deputy Hanson wrote, "As St. John attemped to make the bull back up towards the rear of the trailer, I observed the bull charge St. John with its head lowered.  The bulls head, and horns, made contact with St. John's body, and I observed it lift him up into the air with its horns.  St. John was turned upside down and then thrown to the ground, near the trailer hitch.  The bull again charged St. John, causing him to crawl underneath the bed of the pickup for safety."

2.25 The bull violently gored Dan St. John in his testicles, penis and groin area.  There was blood emanating from his crotch.  The bull broke two of Dan St. John's ribs, from which he still suffers daily pain.  He also suffered serious long-term injuries to his back and right shoulder.  Said injuries make it impossible for Dan St. John to work in his previous profession as a painter and he can no longer take care of his farm the way he could before the incidents herein.

2.26  Thereafter, the Deputies shot the bull and killed it.

2.27  In his official report, Deputy Hanson wrote, "Due to St. John and myself being in imminent danger from the bull, and it not showing any signs of stopping its aggressive behavior, I made the decision to use my shotgun to stop the threat."

2.28  The Kootenai County Sheriff Department and the state of Idaho then charged Mr. St. John with over 30 counts of criminal acts of Injury to Animals and or Animal Cruelty.

2.29  All criminal charges against St. John have been either dismissed and/or he has been fully exonerated.

2.30  The Kootenai County Sheriff Department thereafter killed and/or gave away and/or exterminated most of the St. John's animals that were confiscated from him.

2.31  Daniel St. John went to visit his animals in the care of the Kootenai County Sheriff Department.  They were not looking well, and their water was frozen just as it had been at his residence, which the Deputies advised him was unacceptable.

2.26  The St. Johns lost their family pets, "Ferdinand" and "Baa baa" as well as many livestock, chickens, roosters, sheep and pigs, as well as their dream of a family farm, and their trust in the state and the police.

### The Deputies' Unfitness as Officers and Animal Control Officers

2.27  The Deputies as a whole were unfit to handle the job they set out to accomplish.  As a whole no one was properly trained as to how to handle a bull with horns.

2.28  All Deputies were untrained and did not have the skill or knowledge regarding whether the animals were properly cared for by the Plaintiffs.

2.29  All of the Deputies were not following any appropriate policy of how and when to impound animals.

2.30  Deputy Reynolds was unfit and untrained to handle a bull with horns or how to instruct others how to do so.  She did not have the proper qualifications to determine when and how to confiscate farm animals.

2.31  The Kootenai County Sheriff's Office and the Deputies, without any law or authority,

wrongfully seized the property of the St. Johns.

2.32  The Kootenai County Sheriff's Officer, and the Deputies, without any law or authority, wrongfully and recklessly forced Mr. St. John into a situation wherein he would clearly be injured or possibly killed.

### III.

### FOURTH AMENDMENT CLAIMS

3.1  Plaintiffs incorporate all allegations set forth hereinabove as though fully set forth at length.

3.2  The Fourth Amendment of the United States Constitution prohibits law enforcement officers from using excessive force when seizing citizens and or their property.

3.3  The Fourth Amendment of the United States Constitution prohibits the government from unreasonable searches and seizures.

3.4  The Deputies' treatment of Dan St. John was a physical assault on his person that was unwarranted.

3.4  Daniel St. John and Lisa St. John are entitled to bring an action based on the violation of their Constitutional rights pursuant to 42 U.S.C. § 1983 and other applicable laws.

3.5  The Deputies' instruction to Daniel St. John to assist them with putting a bull into the trailer at the threat of arresting and or charging him with a crime constituted excessive force, unlawful seizure, unlawful detention, and unlawful treatment of a person within their control and or custody in violation of the Fourth Amendment.  The behavior was reckless and wanton, and or grossly negligent.

3.5  The Deputies seizing the personal property and livestock of the St. John's without probable cause was a violation of their Fourth Amendment Rights against unreasonable searched and seizures.

### IV.
### NEGLIGENCE, NEGLIGENCE PER SE, RECKLESSNESS, AND TORTIOUS CONDUCT OF DEFENDANTS CAUSING PERSONAL INJURY TO PLAINTIFF

4.1     Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth herein.

4.2     At the time of the events described in the preceding paragraphs, Defendants had certain duties imposed upon him by statutes, rules, regulations and common law which they then and there owed to Plaintiffs; and said Defendants did negligently, gross negligently, carelessly, recklessly, heedlessly and tortiously breach said duties, including but not limited to:

    4.2.a    Causing physical damage to Plaintiff Daniel St. John in his groin area and shoulder;

    4.2.b    Causing emotional abuse to both Plaintiffs by taking their property without just cause and causing them to feel unsafe in their home and personal safety;

## V.
## NEGLIGENCE, NEGLIGENCE PER SE, RECKLESSNESS, AND TORTIOUS CONDUCT OF DEFENDANTS CAUSING EXTREME EMOTIONAL DISTRESS TO PLAINTIFFS

5.1     Plaintiff incorporates by reference all other paragraphs of this Complaint as if set forth herein.

5.2     At the time of the events described in the preceding paragraphs, Defendants' negligence and gross negligence caused extreme emotional distress to Plaintiffs. Due to all of the behavior and actions of Defendants, Plaintiffs will have difficulty feeling safe in his home and or in his ownership of property.

5.3 Due to the acts of Defendants, Plaintiffs have physical manifestations of emotional distress including but not limited to, nightmares, night sweats, clammy hands, crying, shaking, and lack of sleep.

## VI.
## RETURN OF WORKMAN AND ST. JOHN'S PROPERTY

6.1 Plaintiff incorporates by this reference all other paragraphs of this Complaint as if set forth herein.

6.2 Defendants took without permission and without due process of law many items of

personal property which had emotional value as well as economic value belonging to the St. Johns. These items were destroyed have not been returned.

6.3  The St. John's dream of having a family farm in retirement have been ruined due to the actions of the Kootenai County Sheriff Department acting on behalf of the State of Idaho.

6.4  The items taken by Defendants valued in excess of $10,000 and were also emotionally valuable to the Plaintiffs, which items have not been compensated by Defendants.

## VII.

## FAILURE TO EXERCISE ORDINARY CARE AND FAILURE TO PROPERLY TRAIN AND SUPERVISE

7.1  Plaintiffs incorporate by this reference all other paragraphs of this Complaint as if set forth fully herein.

7.2  Kootenai County and the Kootenai County Sheriff's Office can only through their commissioners, officers, deputies, employees and agents and are vicariously liable for their acts and omissions within the scope of their duties.

7.3  Sheriff Wolfinger acts through his deputies, employees, and agents and is vicariously liable for their acts and omissions within the scope of their duties.

7.4  All of the tools used to seize the St. John's animals and force Mr. St. John to conduct actions which ultimately led to his injuries were regulated and controlled by the Deputies and by Kootenai County, the Kootenai County Sheriff's office and Sheriff Wolfinger.

7.5  The Deputies failed to exercise reasonable care and by acts and omissions including but not limited to:

a.  Instructing Mr. St. John that he was to assist them with boarding a bull into a trailer without a weapon at the threat of being arrested and/or charged with a crime.

b.  Causing great bodily harm to Dan St. John by instructing him to act in a way that was foreseeably going to cause him injury.

c.  Standing by with weapons and joking about how Mr. St. John was going to be gored by a bull.

  d. Taking the St. John and Workman property without probable cause, due process and under color of state law.

  e. Keeping Mr. St. John out of harms way by having a government employee with training and experience herd the bull rather than instructing Mr. St. John to do so.

  f. Not taking care of the animals and property of the St. John's after they were seized and causing their destruction.

  g. Failing in all of the circumstances involved to use reasonable care in handling Mr. St. John and the Workman and St. John's property.

  7.6 Kootenai County, the Kootenai County Sheriff's Office, and Sheriff Wolfinger failed to exercise reasonable care by acts and omission including but not limited to:

  a. Negligently hiring and retaining the Deputies who are named herein and also Does I-10, although they knew or should have known that the Deputies were unfit for the tasks they were performing.

  b. Failing to train, or improperly training, the Deputies;

  c. Failing to enact necessary policies and procedures; and

  d. Failing to properly supervise or control the Deputies regarding the handling of dangerous animals and the handling of animals in general and the instructions of civilians regarding putting them in dangerous situations; and

  e. Failing to otherwise use reasonable care under all circumstances.

  7.7 Defendants' misconduct was negligent, reckless, malicious and/or undertaken with criminal intent.

  7.8 Defendants' misconduct actually, directly and proximately caused injury to Dan St. John.

  7.9 Defendants' misconduct caused Daniel St. John and Dawn Workman to suffer personal injury and loss of property.

## VIII.

## CAUSATION AND DAMAGES

8.1     Plaintiffs incorporates by reference all other paragraphs of this Complaint as if set forth herein.

8.2     As a direct and proximate result of Defendants' negligence, gross negligence, negligence per se, carelessness, recklessness, heedless conduct and tortious conduct, and breach of Constitutional Rights under the Fourth and Fourteenth Amendments, including but not limited to claims for:

    8.2.a   The reasonable value to Plaintiffs for their loss of property;

    8.2 b.  The reasonable value to Plaintiff Daniel St. John for personal injury including,

    8.2.c   Loss of feeling safe and secure in his and her home;

    8.2.d   Loss of consortium;

    8.2 e   Pain and Suffering to Daniel St John due to physical injuries;

    8.2.f   Mental suffering and anguish;

    8.2.g   All other damages suffered by the Plaintiffs

8.3     As a direct and proximate result of Defendant's negligence, gross negligence, negligence per se, carelessness, recklessness, heedless conduct and tortious conduct, Plaintiffs have incurred emotional distress damages attended by physical manifestations, including but not limited to emotional distress resulting from the damages to Plaintiffs.

## IX.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against said Defendants joint and severally in an amount in excess of $10,000.00, as will sufficiently compensate Plaintiffs for damages received, along with reasonable costs, interest, attorney fees and such other relief as the Court may deem appropriate.

## X.

## **<u>DEMAND FOR JURY TRIAL</u>**

COME NOW the above-named Plaintiff(s) by and through his/her (their) attorneys and demands a trial by jury on all issues herein.

DATED this 18th day of February, 2021.

                                        JAMES, VERNON & WEEKS, P.A.
                                        *Attorneys for Plaintiff*


                                         */s/Monica Flood Brennan*_____
                                        Monica Flood Brennan, ISB# 5324